VIKING REFRIGERATORS, INC., *v.* FARRELL.

(Division A. Nov. 22, 1937. Suggestion of Error Overruled January 3, 1938.)

[176 So. 910.   No. 32898.]

Lemuel H. Doty and Albert Sidney Johnston, Jr., both of Biloxi, for appellant.

Geo. R. Smith and White & Morse, all of Gulfport, for appellee.

McGowen, **J.**, delivered the opinion of the court.

Appellant, Viking Refrigerators, Inc., brought suit in the county court against the appellee, Farrell, to recover the sum of $458.22, with interest and attorney fees,

and to enforce a purchase-money lien upon a Tempter Viking porcelain display case, with accessories. The appellee pleaded the general issue and a special plea of failure of consideration. The alleged debt was evidenced by a note. The evidence was heard, the cause was submitted to the jury, and a verdict for the appellee was rendered. The Viking Refrigerators, Inc., appealed to the circuit court where the judgment of the county court was affirmed, and it prosecutes an appeal therefrom to this court.

The essential facts are these: On May 23, 1934, appellant sold to appellee the above-described refrigerator display case, the sale was made by written order, executed by the appellee, and accepted by the appellant. The purchase price was $883.70. M. T. Harris made the sale from a catalogue. The contract contained the following stipulations:

"This contract states the entire agreement for the purchase of said property. . . . It is agreed that the title to the articles covered by this contract no matter whether, or by what manner or degree it may be attached to the realty, shall not pass to the purchaser until the entire purchase price thereof and any note or notes, including renewals, given therefor and all judgments for the whole or any part thereof is paid, and such property shall not be removed from the building in which it is first installed, without the consent of the Viking Refrigerators, Inc. . . . The use of the property described herein, or any portion thereof, for a period of five days, constitutes an acceptance of same, as complying with all the terms and specifications of this contract and all claims for damages, errors or shortage not filed within that time are thereby waived. . . . The responsibility of the Viking Refrigerators, Inc., on this contract shall cease upon the delivery of the goods in good condition to the Railroad or Transportation Company. This contract is not modified by any verbal agreement." By the further terms of the contract $80 was remitted

with the order; $118.50 was paid C. O. D. through the Hancock County Bank, and the balance, $685.20, was evidenced by notes in twenty-four monthly installments of $28.55 each.

These documents, together with the bill of lading, were offered in evidence. The depositions of the officers and employees of the appellant show that the particular chattel described in the contract was delivered in good condition to the common carrier, and that the above balance remained past due and unpaid. The appellant admitted that, on complaint reaching it through Harris and others, it had undertaken, through its representatives and mechanics, to service this refrigerator at various times.

The appellee's evidence was to the effect that about May 28, 1934, he received the chattel at Pass Christian, and that Harris, the agent of the appellant, was there and superintended the unloading and transportation of the machine to appellee's place of business, where Harris installed it; that it appeared to be in good condition, and that there was nothing on the outside of the machine to indicate that the transportation company had in any way damaged it; that he was not a mechanic and knew nothing about the operation of the machine; that he bought it to display meats and other products in his grocery store, and as a refrigerator for the preservation of such articles; that the machine operated all right for about twenty-five days and then it "began to buckle;" he called Harris, who came and undertook to adjust the trouble. The machine allowed the meat and cheese to spoil, the framework buckled, and too much water accumulated in the case. From time to time Harris reported the unsatisfactory condition of the refrigerator and made suggestions to the appellant, and it wrote him the manner in which the trouble could be obviated.

In September an attorney for Farrell wrote the Viking Refrigerators, Inc., requesting that it make a proper adjustment—either repair the refrigerator or send a new one, as Harris had agreed it would. Later a mechanic

was sent by the Viking Refrigerators, Inc., and made certain repairs. At that time Farrell paid $114 on his note, and wrote the company that the mechanic had "done a good job." In the meantime, according to Farrell's testimony, Harris had agreed that the appellant would make the refrigerator perform its function of display and refrigeration or else give him a new one in lieu thereof; that the company could not afford to have the machine fail to operate.

The company took the position that, if the machine had been properly examined upon its arrival at Pass Christian, it would have developed that the railroad company had injured it in transit, and suggested that it would make claim against the railroad if Farrell would execute a proof of claim. The appellant wrote Harris on August 14th with reference to the complaint, and suggested changes in order to make the machine function; the installation of a new coil; and stated, "we would like to see this matter taken care of and assure you your cooperation in this instance will be deeply appreciated." On this advice appellee paid appellant $80 for a new coil, in order to remedy the defect, but, according to Farrell's testimony, the machine again failed to function. He retained it and was operating it at the time of the trial, but claimed that he continued to lose meat and other products and declined to make further payments.

An expert mechanic was offered and testified, in effect, that he examined the machine when the trouble developed in June, 1934, and that in his opinion the machine did not function because of a fundamental defect in its construction, which he explained in detail, and to the effect that appellee had paid the value of the chattel on the date of its receipt by him.

The basis of the appeal here is that the court below erred in not granting appellant a peremptory instruction upon the strict terms of the contract quoted above—no complaint was made by Farrell within five days after he began using the refrigerator, and appellant claims

that he was bound by the terms of the contract and should be required to pay the balance due. Appellant relies mainly upon the case of Stillwell, Bierce & Smith Vaile Co. v. Biloxi Canning Co., 78 Miss. 779, 29 So. 513. In that case an ice machine was purchased by the Biloxi Canning Company from Stillwell. The latter installed the machine and had its engineer instruct the Biloxi Canning Company engineer for a sufficient time for the defendant to make up its mind as to the acceptance of the machine. After the machine had been under test for ten days, as specified in the contract, the buyer wrote the seller that the machine was not up to contract and disaffirmed the contract, but in direct contravention of its disaffirmance the buyer later operated the machine for a time.

We think that, if we concede, though we do not decide, that the short time of five days of use of the machine would constitute an irrevocable acceptance binding the purchaser, even as against the implied warranty, still the conduct of the appellant here in undertaking the repair of this machine for many months, and advising appellee to expend a considerable sum compared to the price of the machine, and the agreement to make it function or furnish appellee another machine, constituted a waiver of this five-day clause in the contract. In other words, when the trouble developed, because of a latent defect according to the evidence offered by appellee, twenty or thirty days after the installation of the machine, the company did not then stand upon its written contract, but undertook, through its agent whose authority is not here disputed, to correct the defect, and thereby assured the buyer that it would so do. It cannot now be heard to say that it stands upon the letter of its contract. There was no express warranty in the written contract here under consideration, but there was an implied warranty on the part of the appellant, the manufacturer, that the chattel would reasonably perform the services for which it was manufactured and sold. Brown v. Mur-

phee, 31 Miss. 91. The waiver we have applied to this case on the part of the appellant is illustrated in the case of Fay & Egan Co. v. Cohn & Bros., 158 Miss. 733, 130 So. 290. In truth, the undisputed facts in the case at bar are more convincing of waiver than the facts in the Fay Case.

Having determined that appellant waived the five-day provision of its contract, the evidence offered by appellee as to the difference in value of the chattel at the time he bought it, with the implied warranty that it would reasonably perform the services for which it was manufactured and sold, and at the time he received it, was competent. The buyer here relied upon the seller's assurance that it would remedy the latent defect in the chattel. Being sued upon the contract, the appellee could rely upon such difference in value as a payment thereon. See McKean v. Apparatus Co., 74 Miss. 119, 20 So. 869, 60 Am. St. Rep. 502; Baker Hardware Co. v. Ellis, 149 Miss. 257, 115 So. 425; J. B. Colt Co. v. Mazingo, 141 Miss. 402, 106 So. 533.

We find no reversible error herein.

Affirmed. ·